# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Miami Division

In re:

ANGELA JOHNSON,

                    Debtor.

_____/

Case No.: 15-22907-RAM
Chapter 13

## RESPONSE TO MOTION FOR RELIEF FROM STAY [D.E. 19]

Debtor ANGELA JOHNSON (the "Debtor") objects to Creditor Scott Carver IIC, L.P. d/b/a Northpark at Scott Carver's (hereafter "Northpark") Motion for Relief from Stay [D.E. 19]. Debtor resides in public housing owned by Miami-Dade County and operated by Northpark. Debtor is entitled to the protections of 11 U.S.C. § 525, which prohibits Northpark from discriminating against her and proceeding with the pending eviction. Even without the protections of 11 U.S.C.§ 525, the exception to the automatic stay in 11 U.S.C. § 362(b)(22) is inapplicable since, on the date the bankruptcy petition was filed, the eviction judgment lacked finality.

## FACTUAL BACKGROUND

Debtor and her two adult children, Lenoris Johnson and Shantavia Johnson, have rented the apartment at 7344 NW 23rd Avenue, #107, Miami, FL 33147 from Northpark for about two years. *See* Affidavit of Debtor Angela Johnson (the "Affidavit of Debtor"), ¶8-9 . A copy of the Affidavit of Debtor is attached as Exhibit "A," and a copy of the Debtor's Residential Lease (the "Lease") is attached as Exhibit "B." Debtor lives in public housing and pays $585 per month for her three-bedroom apartment. *See* Affidavit of Debtor, ¶11-12. This rent is well below the Fair Market Rent in Miami-Dade County of $1,594 for a three-bedroom apartment. 79 Fed. Reg.

59786, 57999 (Oct. 3, 2014). It is critical for Debtor to obtain the benefit of her Chapter 13 bankruptcy so that she retains this valuable housing subsidy. *See* Affidavit of Debtor, ¶23.

Northpark was bult to replace the former Scott and Carver Homes ("Scott-Carver Homes") public housing developments in Liberty City. Scott-Carver Homes was a large public housing complex owned by Miami-Dade County, consisting of 850 public housing units. *See Reese v. Miami-Dade County*, 242 F.Supp.2d 1292, 1295 (S.D. Fla. 2002). Miami-Dade County received a HOPE VI grant from the U.S. Department of Housing and Urban Development ("HUD") to demolish and rebuild Scott-Carver Homes. *Id.* at 1296. Miami-Dade County entered into an agreement with Northpark to build and operate new housing on the Scott-Carver Homes site which would include 67 public housing units. *See* Exhibit "B" – Scott Carver IIC Regulatory and Operating Agreement. Miami-Dade County retained ownership of the real property and entered into a long-term ground lease with Northpark. *Id.* Northpark is required to operate the public housing consistent with all HUD public housing regulations and the Annual Contributions Contract between HUD and Miami-Dade County. *Id.* at 3, 4. Miami-Dade County provides Northpark with annual funding from its public housing operating subsidy, and Miami-Dade County retains significant oversight over the property. *Id.*

Debtor and her family moved into Scott-Carver Homes in 1998. See Affidavit of Debtor, ¶4. When Scott-Carver Homes was demolished in 2003, Debtor and her family were given a Section 8 Voucher, which they used to rent a home in North Miami. *Id.* at ¶5-6. In 2013, Debtor and her family finally returned to the community and rented a public housing unit at Northpark. *Id.* at ¶8-9.

On November 24, 2014, Northpark filed an eviction against Debtor and her two adult children based upon a "Notice of Termination for Non-Payment of Rent." *Id.* at ¶13; *see also*

Miami Dade County Court, Case No. 2014-24404-CC-05 (04). The Complaint alleged that Debtor owed $585 for rent. *Id.* Debtor and Northpark settled the eviction on January 6, 2015, and Debtor agreed to pay Northpark $3,197 for rent, attorney's fees, and costs. *Id.* at ¶14. Debtor immediately made an initial payment of $2,505, and the remaining balance of $692 would be paid in six monthly installments. *Id.* In June 2015, Debtor had to travel to see her mother, who fell ill. *Id.* at ¶15. As a result, Debtor defaulted on her rent and the final stipulation payment. *Id.* Because of this breach, Northpark obtained a "Final Judgment for Removal of Tenant" against Debtor and her two adult children, the codebtors, on July 10, 2015 [D.E. 29].

On or about July 7, 2015, Debtor's son, Lenoris Johnson, tendered $1,385 to Northpark, but it refused to accept the money from him. *See* Affidavit of Debtor, ¶16. The $1,385 payment, included June's rent and stipulation payment, and would have brought Debtor current through July's rent. *Id.*

Debtor filed her petition for a Chapter 13 bankruptcy on July 17, 2015 [D.E. 1]. Despite the automatic imposition of the codebtor stay under 11 U.S.C. § 1301, on July 22, 2015, Northpark and the Miami-Dade Police Department proceeded to evict Debtor's two adult children without obtaining relief from stay. *See* Affidavit of Debtor, ¶20-21. Northpark changed the locks to the apartment and required Debtor's adult children to leave. *Id.* Later in the day, after Debtor returned home from work, Northpark provided Debtor with a key to the apartment. *Id.* To date, despite Debtor's demands, Northpark will not allow the adult children, who are codebtors, access to the apartment. *Id.* Northpark and the Miami-Dade Police Department threatened her adult children with arrest if they return to the apartment.[1] *Id.*

---

[1] Debtor intends to proceed with a separate contempt proceeding against Northpark for violating the codebtor stay. 11 U.S.C. § 1301. Debtor concedes that the state court confused the

3

Upon filing the bankruptcy, Debtor deposited one month's rent with the bankruptcy clerk. *Id.* at ¶19. Debtor also offered to cure the entire debt owed to Northpark. *Id.* at ¶22. Northpark refused to accept the money, and instead filed its Motion for Relief from Stay, claiming there is no adequate protection and seeking to proceed with the eviction.

## ARGUMENT

The Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. 11 U.S.C. §362(a). Debtor filed this bankruptcy to save her public housing and obtain the automatic stay. The automatic stay is the most important protection afforded to debtors because it provides a debtor with "the chance to catch his breath, collect all of the proceedings against him in one place and proceed to reorganize his affairs." *In re: Weintraub*, 361 B.R. 586 (Bankr.S.D.Fla., 2007).

**A.    As a tenant in public housing owned by Miami-Dade County, Debtor is entitled to the protections of 11 U.S.C. § 525(a), and Northpark cannot obtain relief from stay to evict her.**

It is well-settled law in the Southern District of Florida that a debtor who rents a government-owned apartment is entitled to the protections of 11 U.S.C. § 525(a). *See In re: Kelly*, 356 BR 899 (Bankr. S.D. Fla. 2006); *In re: Curry*, 148 BR 966 (S.D. Fla. 1992); *In re: Batista*, Fla. L. Weekly Fed. B 305 (Bankr. S.D. Fla. 2005); *see also In re: Stoltz*, 315 F.3d 80 (2d Cir. 2002). Because of this, public housing authorities may not evict a public housing tenant who seeks to discharge pre-petition rent in a Chapter 7 bankruptcy. *Id.* Although these local cases all involved public housing owned and operated by Miami-Dade County, this Court also previously ruled that the protections of section 525(a), extend to subsidized housing owned by

---

matter by ordering the writ of possession stayed only as to Debtor, Angela Johnson, because she filed a suggestion of bankruptcy. Northpark continues to violate the stay by refusing to authorize Debtor's adult children, the codebtors, to live at the premises.

Miami-Dade County and operated by a private management company. *See In re: Bain*, 2010 WL 10489036 (S.D. Fla. 2010). Here, like in *Bain*, Miami-Dade County owns the property where Debtor lives and her public housing unit is subsidized by the government. *Id.* Miami-Dade County and Northpark entered into a long-term Ground Lease and a Regulatory and Operating Agreement requiring Northpark to operate 67 public housing units subsidized through HUD and Miami-Dade County [D.E. 29]. Miami-Dade County retains oversight of Northpark's management of the property and requires Northpark to comply with all public housing regulations. *Id.* Because Debtor resides in a government-owned and subsidized apartment, she is entitled to the protections of 11 U.S.C. § 525(a), and Northpark is not entitled to relief from stay.

Unlike the cases mentioned above, Debtor filed for protection under Chapter 13 and, at this time, seeks to repay her debt in full. Nothing requires Debtor to repay her debt to receive the protections of 11 U.S.C. § 525(a). This Court previously held that 11 U.S.C. § 525(a) "eliminates the need for a public housing debtor to cure a prepetition default" as required by 11 U.S.C. § 362(l)(1). *See In re: Kelly*, 356 B.R. 899 (Bankr. S.D. Fla. 2006). Despite this, Debtor's good faith attempt to fully repay the debt provides Northpark with adequate assurance and further supports why the Court must deny the Motion for Relief from Stay.

**B.    Public housing tenants may file bankruptcy and assume the lease after entry of the final judgment.**

Although not argued in its Motion for Relief from Stay, Northpark intends to argue that Debtor's lease expired and that there is no longer a lease to assume. Public housing tenancies may only be terminated for good cause. 24 C.F.R. § 966.4(l). According to Paragraph 2.B. of the "Public Housing Dwelling Lease Addendum," the Lease automatically renews for "successive terms of twelve calendar months." *See* Exhibit "B" – Lease. Despite the clear language of the

HUD regulations and the lease, Northpark argues that Debtor cannot assume the lease after its alleged termination by the eviction judgment. That argument was rejected in *Ross v. Metropolitan Dade County*, 142 B.R. 1013 (S.D. Fla. 1992), affirmed, 987 F.2d 774 (11th Cir. 1993). The *Ross* court held that under Florida's anti-forfeiture doctrine, a public housing tenant may file a Chapter 13 bankruptcy and assume the lease, even after entry of the eviction judgment. *Id.* at 1016. The tenant may assume the lease through bankruptcy up until the landlord executes the writ of possession and the tenant is removed from the property. *Id.* Likewise, Debtor may assume her public housing lease, even though Northpark obtained a final judgment of possession.

## C. The exception to the automatic stay in 11 U.S.C. § 362(b)(22) does not apply because the eviction judgment was not final.

Under Florida law, Debtor had until July 17, 2015, to file a motion for rehearing in the eviction. Fla. Stat. § 51.011(4). Because the bankruptcy petition was filed within the time to request a rehearing, the judgment entered against Debtor was not final, and the exception to the automatic stay in 11 U.S.C. § 362(b)(22) does not apply.

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BACPA") which included an exception to the automatic stay when the landlord obtained a pre-petition judgment for possession of residential real property. 11 U.S.C. § 362(b)(22). The Bankruptcy Code does not define "judgment for possession." Because of this, at least two bankruptcy courts have interpreted this phrase to mean a "final determination of the rights and obligations of the parties in a case." *In re: Alberts*, 381 B.R. 171 (Bankr.W.D.Pa., 2008); *In re: Nitzsky*, 516 B.R. 846 (Bankr.W.D.N.C., 2014). These courts used the conventional and ordinary meaning of the term "judgment" and found that finality is a critical element of a binding

judgment. *Alberts* at 177-178; *Nitzsky* at 849.   In both *Alberts* and *Nitzsky*, the debtors filed their bankruptcy petitions after a state court entered a judgment for possession.   *Id.*  Both the *Alberts* court and the *Nitzsky* court found that the exception in 11 U.S.C. § 362(b)(22), did not apply. The courts found the eviction judgments lacked finality since Pennsylvania and North Carolina law allow for *de novo* appeals of eviction judgments. *Id.* While Florida law does not provide for a *de novo* appeal of evictions, the judgment entered against Ms. Johnson also lacked finality according to Fla. Stat. § 51.011(4) and the exception to the automatic stay in 11 U.S.C. § 362(b)(22) does not apply.

Under Florida law, a motion for rehearing affects the finality of a judgment.  *Pruitt v. Brock*, 437 So.2d 768,772 (Fla. 1st DCA, 1983). A judgment is not final until the time for rehearing has passed under Fla. R. Civ. P. 1.530(b). *Jouannou v. Corsini*, 543 So.2d 308, 310 (Fla. 4th DCA, 1989); *see also* Fla. R. Civ. P. 1.550(a) ("No execution or other final process shall issue until the judgment on which it is based has been recorded nor within the time for serving a motion for new trial or hearing..."). While Fla. R. Civ. P. 1.530(b), requires a motion for rehearing to be filed within fifteen days after a judgment is entered, the deadline to file a motion for rehearing in an eviction case is shortened to five days after judgment. Fla. Stat. § 51.011(4). The county court entered the judgment for possession against Debtor on July 10, 2015 [D.E. 29]. Debtor had until July 17, 2015, to file a Motion for Rehearing on the eviction judgment. Fla. Stat. § 51.011(4). Debtor filed her Chapter 13 bankruptcy petition on July 17, 2015, before the time to file for rehearing passed and before the judgment had finality.  Because the eviction judgment lacked finality, the exception in 11 U.S.C. § 362(b)(22), is inapplicable to Debtor's eviction, and this Court must deny Northpark's Motion for Relief from Stay.

7

WHEREFORE, Debtor respectfully requests this Court deny Northpark's Motion for Relief from Stay [D.E. 19] and grant all other relief as this Court deems just and proper.

We hereby certify that we are admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2102.910(A).

Respectfully submitted,

LEGAL SERVICES OF GREATER MIAMI, INC.

BY:    /s/ Evian White
      EVIAN L. WHITE, ESQ.
      Florida Bar No.: 084790
      3000 Biscayne Boulevard, Suite 500
      Miami, FL 33137
      Telephone: (305) 438-2552
      Facsimile: (305) 573-2773
      E-mail: ewhite@legalservicesmiami.org
      Secondary e-mails:     sfreire@legalservicesmiami.org
                      pleadings@legalservicesmiami.org

BY:    /s/ Jeffrey Hearne
      JEFFREY M. HEARNE, ESQ.
      Florida Bar No.: 0512060
      3000 Biscayne Boulevard, Suite 500
      Miami, FL 33137
      Telephone: (305) 438-2403
      Facsimile: (305) 573-5800
      E-mail: jhearne@legalservicesmiami.org
      Secondary e-mails:     mcabrera@legalservicesmiami.org
                      pleadings@legalservicesmiami.org

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on August 7, 2015, by to the following via Notice

of Electronic Filing:

Ryan McCain, Esq. on behalf of Creditor Northpark
rmccain@barfieldpa.com
service@barfieldpa.com

Office of the U.S. Trustee
USTPRegion21.MM.ECF@usdoj.gov

Nancy Neidich, Chapter 13 Trustee
e2c8f01@ch13herkert.com

BY:     /s/ Evian White
        EVIAN L. WHITE, ESQ.
        Florida Bar No.: 084790

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Miami Division

In re:                                          Case No.: 15-22907-RAM
                                                Chapter 13

ANGELA JOHNSON,

                  Debtor.
_____/

### AFFIDAVIT OF DEBTOR ANGELA JOHNSON

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

BEFORE ME, the undersigned authority, personally appeared Debtor ANGELA JOHNSON, who being first duly sworn, deposes and says as follows:

1.  I am the Debtor in this case.

2.  I am over 18 years of age.

3.  I have personal knowledge of all the facts in this Affidavit.

4.  In or about 1998, I moved into Scott and Carver Homes ("Scott-Carver Homes"), which was a public housing development in Liberty City owned and operated by Miami-Dade County.

5.  In or about 2003, Scott-Carver Homes was demolished.

6.  Miami-Dade County gave me a Section 8 Voucher to use. I lived in North Miami while I waited for Scott-Carver Homes to be rebuilt.

7.  I used my Section 8 Voucher until 2013, when I moved back into public housing at Scott-Carver Homes. It is now known as Scott Carver IIC, L.P. d/b/a Northpark at Scott Carver ("Northpark"). Northpark is our landlord.

8.  I live with my two adult children, Lenoris Johnson and Shantavia Johnson, in the apartment we rent from Northpark at 7344 NW 23rd Avenue, #107, Miami, FL 33147 (the "premises").



EXHIBIT

"A"

9.      We have lived at the premises since about 2013. We signed a one-year Residential Lease in 2013, and another one-year Residential Lease in 2014. I also signed a "Public Housing Dwelling Lease Addendum" each time. Even though my Lease expired, I understand that it automatically renews for successive twelve-month terms.

10.     I am the head of household.

11.     Because we live in public housing, our rent is based on our household income.

12.     Currently, our rent is $585 per month for a three-bedroom apartment. I know that this is well below the Fair Market Value of a three-bedroom apartment in Miami.

13.     On November 24, 2014, Northpark filed an eviction against my two adult children and me, based on a "Notice of Termination for Non-Payment of Rent." Northpark said I owed $585 for rent. The eviction case number in Miami-Dade County Court is 2014-24404-CC-05 (04).

14.     I settled the eviction with Northpark at mediation on January 6, 2015. I agreed that I would pay Northpark $3,197 of rent, attorney's fees, and costs. I immediately made an initial payment of $2,505, and the remaining balance of $692 would be paid to Northpark in six monthly installments. My last monthly installment was to be made in June of 2015.

15.     In June 2015, I had to travel to see my mother, who fell ill. Because of this, I could not pay my rent or my stipulation payment for June 2015.

16.     On or about July 7, 2015, my son, Lenoris Johnson, attempted to pay Northpark $1,385. We actually tried to pay more than what was due. The $1,385 was for: $585 for June rent; $50 for June late fees; $585 for July rent; $50 for July late fees not even due yet; and, $115 for the last stipulation payment.

17.     I understand that because I was late on my June 2015 rent and stipulation payments, I did not fully comply with the settlement agreement, and that is why Northpark got a final judgment of eviction against me on July 10, 2015 [D.E. 29].

18.     I filed my petition for a Chapter 13 bankruptcy on July 17, 2015, with the help of Legal Services of Greater Miami, Inc. ("Legal Services").

19.     After I filed my bankruptcy, on July 21, 2015, I deposited one month's rent with the bankruptcy clerk [D.E. Receipt #309625]. Since then, I have been depositing my monthly rent into the Legal Services Trust Account.

20.     On July 22, 2015, my two adult children, Lenoris Johnson and Shantavia Johnson, called me when I was at work. They told me that Miami-Dade Police Department was at our home to evict them. I did not understand why, because I filed a

2

bankruptcy. Northpark changed the locks to our apartment and evicted my adult children. The Miami-Dade Police Department told Northpark, my landlord, that if my adult children return home, to call the police, so that they could be arrested for trespassing.

21.     Later in the day, after I returned home from work, Northpark provided me with a new key.

22.     Since we filed the Chapter 13 bankruptcy, my attorneys at Legal Services also offered Northpark all of the money I owed. Northpark refuses to accept any money from me.

23.     It is critical for my family and me to obtain the benefit of the Chapter 13 bankruptcy so that I can remain in my public housing unit.

24.     My family and I want and need to stay in our public housing unit. Without it, we could not afford private market rent. We would likely become homeless. We do not have anywhere else to go.

FURTHER AFFIANT SAYETH NAUGHT.


_____

ANGELA JOHNSON
Debtor

The foregoing instrument was acknowledged before me on August 7, 2015, by Angela Johnson, who is not personally known to me, but produced her Florida Driver License as identification.


_____
(Signature of person taking acknowledgment)


_____
(Name of Acknowledger Typed, Printed or Stamped)
My Commission Expires:

KHEYLA D. RIVERA
MY COMMISSION # EE872791
EXPIRES March 26, 2017
(407) 398-0153    FloridaNotaryService.com

# McCORMACK
# BARON
# RAGAN

## EXHIBIT A

## RESIDENTIAL LEASE

**1.  PARTIES:**
THIS LEASE, made and entered into this ___1___ day of ____July____ , ___2014___ , by and between

McCormack Baron Ragan Management Services, Inc. as agent for ___Scott Carver IIC, L.P.___

Hereinafter referred to as "Lessor" whose address is ___2181 NW 74th Street, Miami FL 33147___  (Property Name)

and ___Angela Johnson        Lenoris Johnson        Shantavia Johnson___ , who is(are) jointly

and severally responsible under this Lease, hereinafter referred to as "Lessee".

**2.  LEASED PREMISES:**
In consideration of the rents, covenants and agreements hereinafter reserved and contained on the part of Lessee to be observed and performed, the Lessor leases to the Lessee, and Lessee rents from Lessor, those certain improvements and premises (being hereinafter referred to as the "Leased Premises") located at:

Address ___7344 NW 23rd Avenue___        Apt. No. ___74-107___        Unit No. ___74-107___

City ___Miami___        State ___FL___        Zip ___33147___

**3.  COMMENCEMENT AND ENDING DATE OF LEASE:**
The term of this Lease shall begin on ___July 01, 2014___ and end on ___June 30, 2015___
both dates inclusive, unless sooner terminated as hereinafter provided. After th e initial Lease term ends, the Lease will conti nue for successive terms of one month each unless terminated according to the conditions set forth in Paragraph 18 of this Lease.

**4.  RENT, FEES, CHARGES FOR LATE PAYMENTS, RETURNED CHECKS, ATTORNEY COSTS, AND DAMAGES:**

A.  Lessee agrees to pay Lessor at Les sor's office, or at such other place designated by Lessor, without prior demand therefore and without any deduction or set-off whatsoever, the annual rental amount of ___Seven Thousand Twenty___ dollars and No/100 ($___7,020___) in monthly installments of ___Five Hundred Eighty Five___ dollars and No/100 ($___585___) in advance or on the first day of the month. In addition, if the term of this lease begins on any day except the first day of the month, Lessee shall pay a full month's rent in advance and will receive a $_____ credit for rent due on the first of the following month.

B.  Lessee agrees to pay an additional fee for the optional service(s) of ___NA___. This fee is to be paid i n monthly installments of $ ___0___ in advance of or on the first of the month.

C.  All payments due under this Lease m ust be made by personal check, cashier's check or money order. Cash will not be accepted . Lessor's refusal to accept payment by means other than those stipulated within this Lease shall not constitute a waiver of any claims or actions Lessor may have against Lessee.

D.  The Lessee shall pay any money required to be paid by Lessee under all other provisions of this Lease. If such amounts or charges are not paid at the time provided in this Lease, they shall nevertheless, if not paid when due, be collectible with the next installment of rent hereafter falling due hereunder, but nothing herein shall be deemed to suspend or delay the payment of any amount of money or charge at the time the same becomes due and payable hereunder, or limit any other remedy of the Lessor.

E.  If Lessee's rent i s not received by the close of the fifth day of any m onth, Lessee shall pay as a la te charge the a mount of $ ___50___ . The late charge must be paid no later than fourteen (14) days after the Lessor's written notice to the Lessee.

F.  Lessee will be charged a fee equal to the lesser of $ ___40___ or the maximum amount allowed under applicable law for a check that is not honored for payment by a financial institution. If Lessee's personal check is not honored for payment for any reason, then Lessee will be required t o make all future payments by cashier's check or money order. This inc ludes payment pursuant to any existing balance as well as all future payments due. The dishonored check fee must be paid no later than fourteen (14) days after the Lessor's written notice to the Lessee.

G.  In the event an attorney is hired to represent Lessor because of Lessee's violation or breach of any term, condition, provision or agreement of this Lease, Lessee agrees to pay Lessor's attorney's fees, when and as they accrue.

EXHIBIT
"B"
tabbies

36. SIGNATURES:

LESSEE(S):

By: _____  Date: 6-26-14

_____  Date: 6-26-14

_____  Date: 6-26-14

LESSOR:

By: _____  Date: 6/26/14

9

H. Lessee agrees to pay the cost, as defined in this paragraph, of repairing all damages to the Leased Premises and the property where it is located, beyond ordinary wear and tear, and all damages that are caused by the negligent or willful conduct of Lessee or occupants of the Leased Premises or their guests. The cost charged to Lessee will be based upon the List of Charges attached to this Lease, or, if such schedule does not include the damages caused by Lessee, Lessor's cost of materials and labor for repair of the damages. If a contractor other than Lessor makes the repairs, Lessee shall pay the full cost thereof. The cost of repairs under this paragraph is due within thirty (30) days after Lessor makes request for payment.

I. Lessor's acceptance of rent from other than Lessee will not constitute a waiver of any rights, claims, or actions Lessor may have against Lessee. Any acceptance of rent from other than Lessee will not relieve Lessee of his duties and obligations to Lessor, including, but not limited to, the payment of rent and liability for any damages to the premises.

**5.  SECURITY DEPOSIT:**

A. To secure performance of this Lease, Lessee has paid Lessor a security deposit in the amount of _____ 625 ☒ . Pursuant to §83.49 of the Florida Statutes, the deposit shall be held in a separate interest bearing account. In addition, the Lessor shall, within 30 days of receipt of the security deposit, give written notice to the Lessee regarding the manner in which the Lessor is holding the security deposit and the rate of interest.

Within fifteen (15) days after termination of tenancy and Lessee's release of possession, Lessor shall return the full amount of the security deposit. Notwithstanding the foregoing, Lessor may withhold so much of the deposit as may be necessary to: (i) restore the premises to its condition at the beginning of the tenancy; (ii) remedy a default in the payment of rent or additional rent due under this Lease; or (iii) compensate the Lessor for actual damage sustained as a result of the Lessees failure to give proper notice to terminate Lease or termination prior to the Lease expiration. Lessee shall remain liable for the cost of all damages, ordinary wear and tear excepted, remaining unpaid after Lessor's application of the security deposit. Lessee understands that liability for damages and rent due at time of move out is NOT limited to the amount of deposit and that the security deposit shall not be used for rent or other charges prior to terminating the occupancy. Any deduction from the security deposit must be itemized by the Lessor in a written notice of the Lessee together with the amount due, if any, within 30 days after termination of the tenancy and delivery of possession and demand by the Lessee, whichever is later. This obligation is met when the Lessor mails the portion of the deposit owed and/or the written notice within 30 days by first class mail or better.

B. In the event of a refund of the security deposit and multiple Lessees, one refund check will be issued to the name listed as "Head of Household" on the rental application form.

**6.  DELAY IN DELIVERING POSSESSION, ABATEMENT OF RENT:**
If for any reason the Lessor cannot deliver possession of the Leased Premises to the Lessee at the commencement of the Lease term, this Lease shall not be void or voidable, nor shall the Lessor be liable to the Lessee for any loss or damage resulting therefrom nor shall the term of this Lease be extended; in lieu of damages, rent shall be abated for the period between the commencement of the Lease term and the time when the Lessor delivers possession.

**7.  TRUTH OF LESSEES REPRESENTATIONS:**
Lessee warrants that the information given by Lessee in the rental application is true. If such information is materially false, the Lessor may at Lessor's option terminate this Lease.

**8.  OCCUPANCY, USE OF APARTMENT, AND OBLIGATION TO COMPLY WITH RULES AND REGULATIONS:**

A. The Leased Premises shall be occupied solely for residential purposes by Lessee, the members of the Lessee's family listed below, and other authorized members of the household listed below (including any live-in aide) who are authorized to occupy the Leased Premises only so long as the Leased Premises are occupied by Lessee, and who have no right to possession of the unit:

Family Members

| Name | D.O.B. | Relationship to Lessee | Sex |
|------|--------|------------------------|-----|
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |

Other Authorized Household Members

| Name | D.O.B. | Relationship to Lessee | Sex |
|------|--------|------------------------|-----|
| Name | D.O.B. | Relationship to Lessee | Sex |
| Name | D.O.B. | Relationship to Lessee | Sex |

B. **Occupancy Standards:**
(i)        MAXIMUM OCCUPANCY. Two (2) persons per bedroom.

Apartments with income restrictions must avoid underutilizing bedrooms. Therefore, a minimum occupancy of one person per bedroom will apply for such apartments.

(ii) Unit size is determined at initial application and upon renewal. No more than three (3) unrelated adults may reside in an apartment.

(iii) Any change in the occupancy in the Lease term must be approved in writing by the office of the Site Manager. Lessee shall be obligated to notify the Site Manager of any child added to the family by birth, adoption, or placement as a foster child during the term of the Lease, and upon the receipt of such notification, the Site Manager shall add as authorized occupants said child or children. Lessee agrees that any change in the number of authorized occupants during the Lease term as the result of the birth, adoption, or foster placement of a child or children, may require relocation to a different unit at the expiration of the current Lease term to maintain compliance with the occupancy standards established by Lessor.

(iv) Any addition to the individuals permitted to reside in the premises requires advance written approval from Lessor. Such approval may be granted at the discretion of Lessor and only if the unit size is appropriate, and the new adult family member passes Lessor's screening criteria including, but not limited to, a criminal history check. Lessee agrees to wait for Lessor's written approval before allowing additional person/s to move into the premises. This provision applies equally to all persons, including spouses, children under foster care or temporary custody, foster adults, and live-in aides.

(v) Any change resulting in residence of the household members named above on the Lease shall be reported in writing by the Lessee to Lessor within ten (10) days of occurrence.

(vi) Each member of the Lessee's family 18 years or older shall sign the Lease to acknowledge his/her acceptance of all terms. Members of the Lessee's family upon attaining age 18 years after initial lease execution shall sign a new lease with all other adult members of the household at the next annual re-certification.

(vii) The occupancy standard set forth herein must be complied with throughout the Lease term. In order to assure compliance with this standard, all persons initially residing in the unit must be approved in writing by the office of the Site Manager. This Lease will not be renewed or extended for any household in violation of this standard. Further, Lessee will be in violation of the Lease and subject to eviction proceedings if a person resides in the Leased Premises who is not listed on this Lease or who has not been approved in writing by the office of the Site Manager.

C. Lessee and all occupants of the Leased Premises and Lessee's guest(s) shall comply with the "Rules and Regulations" that are to be considered a part of this Lease.

D Lessee agrees that the Lessee, members of the household and/or guests must not engage in or permit any criminal activity, including drug related criminal activity, whether in the above stated address or elsewhere on or near the apartment or apartment community, or any other unlawful activity in the above stated address or, on or near that apartment community. If Lessee, members of the household and/or guests are arrested for any unlawful activity, the Lease will be terminated in ten (10) days.

E. Lessee shall not suffer nor commit any waste in or about the Leased Premises or building and shall at Lessee's expense keep the apartment in good order and repair, ordinary wear and tear excepted. On termination of this Lease, Lessee shall return the apartment to Lessor in like condition.

F. Lessee agrees not to allow any excessive noise or any other objectionable behavior to disturb the peaceful occupancy and quiet enjoyment of other residents.

G. Lessor reserves the right to regulate the use of all vehicle parking on the above apartment community and to require the registration of all such vehicles.

H. Lessee shall not keep any domestic or wild animal or pet in, on, or about premises without the prior written consent of the Lessor.

9. **INCOME RESTRICTED APARTMENTS:**
Occupants of an income restricted apartment must annually comply with income, family composition, and student status certification requirements. Copies of all required income statements, including those furnished after the date of this Lease, shall be attached ed to and constitute a part of this Lease. If Lessee no longer qualifies under the requirements for the apartment, Lessee agrees to move within thirty (30) days of notification by Lessor. **AO** _____ **initials by Lessee and date if provision is applicable.**

10. **OCCUPANCY OF ACCESSIBLE UNIT.**
Lessee that does not have a disability requiring accessible features, and resides in an accessible unit, agrees to move to the next available unit within thirty (30) days of notification by Lessor. **AO** _____ **initials by Lessee and date if provision is applicable.**

11. **MILITARY CLAUSE.**
If the Lessee is an active or reserve member of the armed forces of the United States, then Lessee may terminate this Lease under the conditions set forth in **Florida** Revised Statutes 9:3261, as that law may be amended from time to time.

12. **LESSEE'S INSPECTION.**
Lessee hereby declares that Lessee has inspected the Leased Premises, the building and all related areas and grounds and that Lessee accepts the same in the condition in which they are now. Lessee acknowledges receipt of the Move-In Inspection Form, attached to this Lease.

**13. LESSEE TO INSURE POSSESSIONS:**
Lessor is not an insurer of Lessee's person or possessions and Lessee will carry such insurance as Lessee deems necessary. Lessee further agrees that Lessor shall not be liable for any damage to Lessee or Lessee's property, or any other person occupying or visiting the Leased Premises or building, resulting from the Leased Premises or building or any part thereof or any appurtenances thereof being temporarily out of repair due to da mage caused by the elements or mechanical failure, or fire, or due to the happening of any accident in or about the building or apartment, or due to any act or neglect of any other Lessee or any other person within or about said building.

**14. ACCESS BY LESSOR:**
Lessee and Lessor agree that Lessor, upon giving forty-eight (48) hours or other reasonable advance notice of intention to enter the Leased Premises, may enter the Leased Premises to inspect s ame, make necessary or agreed repairs, decorations, alterations or i mprovements; supply necessary or agreed services; or exhi bit the apartment to prospective residents, mortgagees, workmen or contractors, or as is otherwise necessary in the operation and protection of the building, its components or persons therein. Lessor shall be provided with and shall retain and use any copies of any keys necessary for access to the Leased Premises Lessee agrees that Lessee's request for repairs shall be considered notice of Lessor's intention to enter the Leased Premises. Lessee further agrees that Lessor's receipt of Lessee's notice to vacate shall be deemed notice of Lessor's intention to enter for purposes of inspection and presentation to prospective residents (including installation of leasing signs).

The Lessee agrees that the Lessor, or Lessor's delegate, may enter the Leased Premises at any time without advance notification when there is an emergency such as fire, flood or other hazardous conditions or where there is r easonable cause to believe that an emergency exists. It is agreed and understood that for routine inspection, preventive maintenance procedures, or city code inspections, posting a written notice in the central mail delivery area and/or in a central utility area of the premises shall be regarded as notice to enter.

LESSEE'S ABSENCE:
Lessee shall notify Lessor of any anticipated extended absence from the premises in excess of seven (7) days, n o later than the first day of such absence. During the absence, Lessor may enter the dwelling unit at times reasonably necessary for inspection to preserve the premises.

**15. ABANDONMENT**
If Lessor reasonably believes that Lessee has vacated the Leased Premises with no intention to reside therein; and rent has remained unpaid for thirty (30) days; and Lessor has posted written notice on the premises and mailed to Lessee's last known address by both first-class mail and certified mail, return receipt requested, a notice of Lessor's belief of abandonment; and no response is received from Lessee within ten (10) days from the date of posting and mailing of Lessor's notice, then Lessor may deem the premises and any personal property remaining therein to have been abandoned by Lessee and may terminate the Lease and enter the Leased Premises to perform necessary decorating and repairs and to relet the Leased Premises in accordance with the terms of this Lease. In this event, Lessor shall not be liable to Lessee for the removal and disposition of any personal property in the Leased Premises.

**16. CONDEMNATION:**
If the whole or any substantial part of the Leased Premises is taken or condemned by any competent authority for any public use or purpose, the term of this Lease shall, at the option o f the Lessor, be terminated upon the date when p ossession of the part so taken shall be required for such taking. Lessor shall be entitled to   receive the entire condemnation award or damages without apportionment with Lessee. Rent shall be adjusted as of the date of Lessee's vacating as the result of such condemnation.

**17. DAMAGE OR DESTRUCTION OF LEASED PREMISES:**
If the Leased Premises shall be damaged by fire, the elements, unavoidable accident or other casualty without fault or negli gence by the Lessee, but are not thereby rendered untenantable in whole or in part, Lessor shall at its own expense cause such damage to be repaired, and the rent shall not be abated. If by reason of such occurrence, the premises shall be rendered untenantable only in part, Lessor shall at its own expense cause the damage to be repaired, and the rent meanwhile shall not be abated. If the premises shall be rendered wholly untenantable by reason of such occurrence the Lessor shall at its own expense cause such damage to be repaired, and the rent meanwhile shall abate until the Leased Premises have been restored and rendered tenantable, or Lessor may at its election, terminate this Lease and the ten ancy created by giving to Lessee within sixty (60) days following the date of said occurrence, written notice of Lessor's election to do so. In the event of such termination rent shall be adjust ed as of such date. There shall be n o abatement of rent in the event tha t damage to the pr emises is caused by Lessee, occupants of the Leased Premises, or their guests.

**18. ADDITIONAL OBLIGATIONS OF THE LESSEE**
As a requirement for continued occupancy of a L eased Premises the Lessee, in addition t o other obligations described elsewhere in this Lease, must:

A.   Abide by all r egulations and con ditions established by Lessor and with the r equirements of all applicable bu ilding codes, housing codes, federal regulations, state or local law which impose obligations relating to the occupancy of a Leased Premises and surrounding premises.

B.   Comply with the terms of the Lease, including but not limited to rent payment and housekeeping requirements.

C.   Use the property exclusively as a private residence for Lessee and the household members listed in the Lease, and not to use or permit its use for any other purpose. Lessor  may by prior written approval consent to a  member of the family composition engaging in a legal home-based business in the Leased Premises where the business is incidental to the primary use of the unit as a residence . The activities of any such authorized business are subject to the requirements of this Lease and all applicable Federal, State and local laws which impose obligations r elating to the o peration of a h ome-based business. Failure   to operate the hom e-based business in compliance with this Lease will result in eviction.

D.   Not give accommodation to any guest in excess of a total of fourteen (14) days per year, whether or not consecutive, unless the lessee obtains the advance written consent of Lessor. Not to allow any other person, including  guest or visitors, or  other person otherwise

under the control of the lessee, to reside or to stay as a guest in the Leased Premises during the lessee's absence unless the lessee obtains the advance written consent of Lessor.

E.   Not to allow any other person, other than those authorized to reside in the Leased Premises to use the Leased Premise's address on their identification cards, driver license or as their mailing address.

F.   Keep the Leased Premises, the surrounding premises and any such other areas as may be assigned to the Lessee for the Lessee's exclusive use in a clean, safe and sanitary condition.

G.   Refrain from and cause members of Lessee's household, guests or other persons under the control of Lessee or any member of Lessee's household to refrain from destroying, defacing, damaging or removing Lessor's property from the Leased Premises, common areas or other Lessor property.

H.   Notify Lessor promptly of any known need for repairs to the Leased Premises and of any known unsafe condition in the common areas and grounds of the development which may lead to damage or injury.

I.   Pay reasonable charges, other than for wear and tear , for the repair of damages to the Leased Premises, or to Lessor buildings, facilities or common areas caused by the Lessee, any member of his/her household, a guest or another person under the Lessee's control.

J.   To act, and cause household members, guests or other persons under the Lessee's control, to act in a manner which will not disturb other lessees' peaceful enjoyment of their premises. If a warning is given to the Lessee or any adult household member concerning any guest, neither the Lessee nor any household member shall permit such person to have access to the Leased unit where the Lessee and household members reside. The Lessee and household members agree that such person who subsequently visits the site where the Lessee's unit is located shall be considered a trespasser. The Lessee and household members shall cooperate in all respects with Lessor personnel and law enforcement officers in treating such person as a trespasser.

K.   Assure that the Lessee, any member of his/her household, a guest or another person under the Lessee's control does not engage in:

    (i)   Any activity, criminal or non-criminal, that threatens the health, safety, or right to peaceful enjoyment of the premises by other lessees or employees of Lessor;

    (ii)   Any criminal activity whether on or off the premises. Any such criminal activity, even in the absence of a conviction, shall be cause for termination of tenancy, and for eviction from the Leased Premises. For the purposes of this Lease: drug-related criminal activity shall include illegal po ssession, manufacture, sale, distribution, use and/or possession with intent to manufacture, sell, distribute, or use, a controlled substance; violent criminal activity shall include any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, nontrivial bodily injury or property damage; and non-violent criminal activity shall include any non-violent criminal activity that threatens the health, safety, or right to peaceful enjoyment by other lessees or employees of Lessor;

L.   Interfering with the job responsibilities of, or in any way threatening, Lessor employees, authorized vendors, service personnel or representatives of Lessor.

M.   By signing this rental agreement the Lessee agrees that upon surrender or abandonment of the Leased Premises, as defined by Chapter 83, Florida Statutes (FS), the Lessor shall not be liable or responsible for storage or disposition of the Lessee's personal property.

## 19. ADDITIONAL OBLIGATIONS OF THE LESSOR
The Lessor will:

A.   Maintain the Leased Premises and the development in decent, safe and sanitary condition.

B.   Comply with requirements of applicable building codes, housing codes and regulations materially affecting health and safety.

C.   Make necessary repairs to the Leased Premises.

D.   Keep development buildings, facilities and common areas, not otherwise assigned t o the Lessee for maintenance and upkeep, in a clean and safe condition.

E.   Maintain in good and safe working order and condition electrical, plumbing sanitary, heating, ventilating, and other facilities and appliances, including elevators, supplied or required to be supplied by Lessor.

F   Provide and maintain appropriate receptacles and facilities for the deposit of ashes, garbage, rubbish and other waste removed from the Leased Premises by the resident. However, Lessor is not obligated to provide individual trash cans.

G.   Supply running water, reasonable amounts of hot water and reasonable amounts of heat at appropriate times of the year (according to local custom and usage) except where the bu ilding that includes the Leased Premises is not required by law to be equipped for that purpose, or where heat or hot water is generated by an installation within the exclusive control of the Lessee and supplied by a direct utility connection.

H.   Notify the Lessee of the specific grounds for any proposed adverse action by Lessor. Such adverse action includes, but is not limited to, a proposed Lease termination, transfer of the resident to another unit, or imposition of charges for maintenance and repair, or excess consumption of utilities.

I.   When required to afford the Lessee opportunities for a hearing under the grievance procedure, inform the Lessee of the right to request such hearing. In the case of a lease termination, the notice of Lease termination shall constitute adequate notice of proposed adverse action. In the case of a proposed adverse action other than a proposed Lease termination, Lessor shall not take the proposed action

until the time for the Lessee to request a grievance hearing has e xpired, and (if a hearing was ti mely requested by the residen t) the grievance process has been completed.

### 20.  HAZARDS, HEALTH AND SAFETY CONDITIONS:

In the event the Leased Premises is damaged to the extent that conditions are created which are hazardous to t he life, health or safety of the Lessee, the rights and obligations of the Lessee and the Lessor are as follows:

A.    The Lessee shall i mmediately notify the Lessor of the damage and the L essor shall make repairs within a reasonable ti me of the Lessee's reporting the condition to the Lessor.

B.    If the necessary repairs cannot be made within a reasonable time, the Lessor shall offer the Lessee a replacement Leased Premises, if available, provided the damage was not caused or made worse by the Lessee, any member of his/her household, a guest or a person under the Lessee's control.

C.    If alternative accommodations are unavailable and necessary repairs cannot be made within a reasonable ti me, the Lessor shall a bate rent in proportion to the seriousness of the da mage and loss in  value  as a dwelling whil e  the Lessee  is residing in the unre paired Leased Premises.  The Lessee agrees to continue to pay full rent, less the abated portion agreed upon by the Lessor, during the time in which the defect remains uncorrected.  No abate ment of rent shall occur if the Lessee  rejects alternative accommodations or if the damage was caused by the Lessee, any member of his/her household, a guest or a person under the Lessee's control.

D.    If the Lessor determines that the Leased Premises is untenable because of imminent danger to the life, health, and safety of the Lessee, and alternative accommodations are refused by the Lessee, this Lease shall be terminated.

### 21.  TERMINATION OF LEASE AND RETURN OF POSSESSION:

Upon the termination of this Lease or Lessee's right of possession, whether by lapse of time or otherwise, Lessee shall deliver immediate possession of the Leased Premises to Lessor and deliver all keys to the Lessor at the site management office, or as Lessor otherwise directs, which action shall establish the date and time of vacation of the Leaded Premises by the Lessee.

This Lease, or an y extension thereof, may be terminated at the end of  the Lease term or any agreed extension thereof  by Lessee giving written notice as per Paragraph 23 and as hereinaf ter stipulated. Vacate notices must have a definite vacate date. Notices with dates marked as tentative or showing a vacate date "spread" will not be accepted.

All such notices must be received by the office of the Site Manager by the first day of the month and are effective thirty (30) days after the first day of the month or at a later date, not to exceed sixty (60) days from the date of receipt, as stipulated in the notice.

If Lessee vacates the Leased Premises prior to the end of the Lease term or any agreed extension thereof, Lessee shall re main liable for all amounts due for the remainder of the term or agreed extension of this Lease. However, if Lessor releases the premises for a monthly rental that equals or exceeds Lessee's existing monthly rate then Lessee's obligation for the remaining rent shall cease as of the date of occupancy by the new Lessee. Such rent-to-rent obligation shall be prorated on a daily basis. Lesse e shall remain liable for all other ch arges accrued pursuant to early termination of this Lease or any extension thereof.

Lessee agrees that in the event  Lessee fails to vacate  the Leased Pre mises upon term ination of t his Lease, this Lease shall not  renew. Additionally:

(1)    Lessee shall pay as liquidated damages for the entire t ime that possession is withheld a sum  equal to two times the amount of rent herein reserved, pro-rated per day of such withholding, plus Lessor's actual damages resulting from such withholding; or

(2)    Lessor, at its sole option, may, upon giving Lessee written notice, extend the term of the Lease for a like period of time not to exceed one (1) year at such rate as Lessor has stated prior to said termination date; or

(3)    If Lessor fails to notify Lessee in writing within 45 days of said ter mination under either (1) or (2) above, Lessee's continued occupancy shall be as a month-to-month Lessee.

No action or failure to act by  Lessor, except as her ein provided, shall operate as a waive r of Lessor's right to term inate this Lease and Lessee's right of possession nor operate to extend the term thereof.

### 22.  ASSIGNMENT, SUBLETTING AND RELETTING:

Lessee shall not s ublet the apart ment (nor any part the reof) and shall not assign this Lease and shall not permit any transfer of Lessee's interest by operation of law.

### 23.  MORTGAGE ON PROPERTY:

This Lease and the estate of Lessee shall be subject and subordinate to any present or future deeds of trust and mortgages on the real estate (or any part of it) upon which the Leased Premises is situated and to all advances upon the security of such deeds of trust and mortgages.

### 24.  LESSEE'S DEFAULT AND LESSOR'S REMEDIES:

In the event of any failure of Lessee to pay any rent or additional rent due hereunder within five (5) days after the same shall be due; or in the event of any failure to perform any of the other terms or covenants of this Lease to be observed or performed by Lessee (including the terms of the Rules and Regulatio ns described in Paragraph 8 above a nd made a part of  this Lease), Lessor shall have the  following remedies:

(i)    Lessor may terminate this Lease and the ter m created hereby, in which event Lessor may forthwith repossess the Leased Premises in accordance with law and Lessee agrees to pay to Lessor damages in an amount equal to the amount of rent provided in this Lease until the date of termination plus any other sum of money and damages owed by Lessor or provided by law; or

(ii)   Lessor may elect not to terminate this Lease but only Lessee's right of possession. Lessor may repossess the apartment in accordance with law, but such repossession will not reduce Lessee's obligation to pay rent hereunder for the full term. In such event, Lessor may relet the apartment as Lessee's agent and may make repairs, alterations and additions in or to the apartment and redecorate. Lessee shall on demand pay to Leased Premises and all Lessor's expenses of reletting. In the event the amount collected by Lessor from any reletting is not sufficient to pay the amount provided in the Lease to be paid by Lessee, Lessee shall pay to Lessor, as damages, the amount of each monthly deficiency; or

(iii)   All other remedies provided at law or in equity.
Lessee shall pay Lessor all Lessor's costs, expenses and attorneys fees pertaining to the enforcement of the covenants and agreements of this Lease, whether or not suit is filed.

## 25.   REMEDIES CUMULATIVE, NONWAIVER OF OBLIGATIONS:

A.   All rights and remedies given to Lessee or to Lessor shall be distinct, separate and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically limited or waived in this Lease.

B.   Lessee's obligation to pay rent during the term or any extension thereof or any hold-over tenancy shall not be waived, released or terminated by: the service of any notice; demand for possession; notice of termination of tenancy; institution of any action or ejectment; any judgment for possession; or any other act or acts resulting in termination of Lessee's right of possession.

## 26.   NOTICES:

Notices, including those provided by statute, shall be in writing and shall be deemed to have been given when served by delivery in person or when mailed by United States mail, regular postage prepaid, addressed (i) if to Lessor, to the office of the Site Manager of the property; or (ii) if to Lessee , to the Leased Premises. If service is by mail, the date of mailing plus two days shall be deemed the date of delivery. Notices served in person on Lessee may be served if left with some person residing in or in possession of the apartment above the age of 18, and in the event of apparent abandonment the notice shall be served by posting same on the door to the apartment and by mail.

The Lessee is required to give a minimum of thirty (30) days written notice as per Paragraph 18 prior to vacating the premises.

## 27.   UTILITIES AND APPLIANCES:

A.   Lessee agrees to maintain utility services for the Leased Premises, which may include adjacent exterior lig hting. The utilities to be paid by Lessee and Lessor are checked below:

| | Lessee | Lessor |
|---|---|---|
| Gas | ☐ | ☐ |
| Water Sewer | ☐ | ☐ |
| Trash Removal | ☐ | ☐ |
| Electric | ☐ | ☐ |
| Other: _____ | ☐ | ☐ |

*Telephone and Cable are the responsibility of Lessee.*

B.   The appliances to be supplied by the Lessee and the Lessor are checked below:

| | Lessee | Lessor |
|---|---|---|
| Cookin           g Range | ☐ | ☐ |
| Refrigerator | ☐ | ☐ |
| Air Conditioner | ☐ | ☐ |
| Washer | ☐ | ☐ |
| Dryer | ☐ | ☐ |
| Other: _____ | ☐ | ☐ |

## 28.  Required Notice of Registry of Location of Certain Sex Offenders.

Notification pursuant to LSA-R.S. 37:1469 is hereby given. The names of those persons who are required to register pursuant to LSA-R.S. 15:540 et seq., are  available by acc essing the statewide database at: http://www.lsp.or g/socpr/default.html. This information may also be retrieved by phone at 1-800- 858-0551 or 2 25-925-6100. Brokers, agen ts and affiliates are  not responsible for provi ding information regarding the proximity of registered sex offenders beyond providing the information above.

## 29.  MOLD INFORMATIONAL PAMPHLET

Information regarding mold prevention can be found on *A Brief Guide to Mold, Moisture, and Your Home* which is maintained on the United States Environmental Protection Agency (EPA) website at http://www.epa.gov/iaq/molds/index.html.

## 30.  PETS

Lessee is permitted to maintain pets in the Leased Premises in accordance with the Scott Carver Pet Policy, attached to this Lease and made a part hereof. The Lessee must comply with all federal, state and local laws pertaining to the possession of animals as well as the following terms and conditions.  The terms and conditions set forth in the Lease and in the Pet Policy shall be enforced by the Lessor and failure to comply with such terms and conditions shall be deemed grounds for termination of the Lease and such other actions as provided for in state

and local laws. Animals that are needed as a reasonable accommodation for persons with disabilities are not subject to pet fees and deposits set forth in the Pet Policy, but must otherwise comply with the Pet Policy.

**31.. GRIEVANCES**

Disputes arising during the term of the Lease may be resolved by means of the Scott Carver Grievance Procedure attached to the Lease and made a part hereof. A "grievance" shall mean any dispute which a Lessee may have with respect to Lessor's action or failure to act in accordance with the Lease (including applicable Addenda), or policies or rules of the Lessor regarding the residential community, which the Lessee believes adversely affects the Lessee's rights, duties, welfare or status. These procedures are not applicable to disput es between residents not involving the Lessor, or to class grievances. The grievance p rocedures is not intended as a foru m for initiating or negotiating policy changes between a group or groups of residents and the Lessor.

In addition, these grievance procedures will not be available in any case concerning a termination of the Lease or eviction that involves any criminal activity that threatens the health, safety or right to peaceful enjoyment of the Leased Premises of other residents or employees of the Lessor; any violent or drug-related criminal activity on or off the premises of the residential community; or any activity resulting in a felony conviction of any member of the resident household.

**32. ENTIRE AGREEMENT AND PARTIAL INVALIDITY:**

The terms and conditions set forth in this Lease constitute the entire agreement between the Lessee and Lessor. No modification, waiver or amendment of this agree ment shall be binding upon either the Lessor or Lessee unless made in wr iting and executed by both parties. However, Lessor may amend the Rules and Regulations referred to in Paragraph 8 above, without prior notice to or consent of Lessee and Lessee hereby acknowledges that Lessor shall at all times have and may exercise the authority to regulate reasonably the use of the property and the Leased Premises.

This Lease and its Attachments make up the entire agreement between the Lessee and the Lessor regarding the unit. If any Court declares a particular provision of this Leas e to be invalid or illegal, all other te rms and conditions of the Lease will remain in effect and both the Lessor and the Lessee will continue to be bound by them.

**33. LEASE BINDING ON HEIRS:**

All the covenants and the agreement of this Lease shal l be binding upon and benefit the heir s, executors, administrators, successors, and assigns of Lessor and Lessee.

**34. ATTACHMENTS:**

| | |
|---|---|
| -Rental Application | _____ Lessee Initials |
| -Move-in Inspection Form | _____ Lessee Initials |
| -List of Charges | _____ Lessee Initials |
| -Income Certification (if applicable) | _____ Lessee Initials |
| -LIHTC Lease Addendum (if applicable) | _____ Lessee Initials |
| -Public Housing Lease Addendum (if applicable) | _____ Lessee Initials |
| -Scott Carver Pet Policy | _____ Lessee Initials |
| -Scott Carver Grievance Procedures | _____ Lessee Initials |
| -Other, specify: _House Rules_ | _____ Lessee Initials |
| | _____ Lessee Initials |

The above referenced attachments and Addenda (if applicable) are incorporated in and made a part of this Lease by reference.

**35. LIABILITY**

**(a)** If any employee of Lessor renders any other services (such as parking, washing or delivery of automobiles, handling of furniture or other articles, cleaning the rented premises, pack age delivery, or any other servic e) for or at the request of Lessee, his family, employees or guests then, for the purpose of such service, such employees shall be dee med the servant of Lessee , regardless of whether or not payment is arranged for such se rvice, and Lessee agrees to relieve Le ssor and hold Lessor har mless from any and all liability in connection with such services.

**(b)** The Lessor shall not be liable to Lessee, or to Lessee's employees, patrons and visitors, or to any other person for any damage to person or property caused by any act, omission or neglec t of Lessee or any ot her Lessee of said demised premises, and Lessee agrees to hold Lessor har mless from all clai ms for any such da mage, whether the in jury occurs on o r off the leased premises. Lessee has inspected the premises and assumes responsibility for their condition. Lessor shall not be liable for injury caused by any defect in or on the premises or in or on Lessor' s property to the Lessee or anyon e on the premises or Lessor's property who derives his right to be thereon from the Lessee, unless the Lessor knew or should have k nown of the defect or had rece ived notice thereof and failed to remedy it within a reasonable time. Should Le ssee fail to pro mptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any dam age resulting to Lessor or other parties. Lessor w ill not be responsible fo r damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the premises or Lessor's property, or the consequences thereof. _____

_____ **(Lessee(s) Initials)**

## SCOTT CARVER PET POLICY

A. _General_. Lessee is permitted to maintain pets in the L eased Premises in accordance with th e following terms and conditions. The Lessee must comply with all f ederal, state and local la ws pertaining to the possession of animals as well as the foll owing terms and conditions. These terms and conditions shall be enforced by the Lessor and failure to comply with these terms and conditions shall be deemed grounds for termination of the Lease and such other actions as provided for in state and local laws. Animals that are needed as a reasonable ac commodation for persons with disa bilities are not considered pets, and thus are not subj ect to these term s and conditions.

B. _Possession of Pets_. The possession of pets in a dwelling unit is limited as follows:

  (i) Pets shall be lim ited to companion animals which are defined as domestic household pets such as dogs (excluding pitbulls), cats, small caged birds, guinea pigs, gerbils, hamsters, rabbits and fish. Reptiles, exotic ani mals and birds of prey are not consid ered household pets.

  (ii) Only one pet may be kept in any one dwelling unit. If current residents possess more than one pet pr ior to the adoption of this policy, they may continue ownership of those pets, but under no circumstance will any resident be permitted to maintain more than two pets in any one dwelling unit. Once a second pet leaves the household, it may not be replaced with another pet. At that time, the household must comply with the limitation of only one pet per household. The head of the household is responsible for any pet in the unit regardless of the actual pet owner.

  (iii) No wild or exotic animal may be kept as a pet at any time. This means any monkey (or other non-human primate), raccoon, skunk, wolf, squirrel, fox, leopard, panther, tiger, lion, lynx, or any other warm blooded animal, poisonous or constricting snake or tarantula which can norm ally be found in the wild, or any member of crocodilian, including but not limited to alligators, crocodiles, caimans or gavials.

  (iv) No aggressive or vicious animal may be kept as a pet at any time. Vicious animal means any animal that by virtue of its s ize, temperament, natural environment or present circumstances is capable of threatening the safety of a living being or one that may be prone to extreme fierceness, unrestrained violence or brutality. Aggressive animal means any animal, which will commit an unprovoked attack or threat. An a nimal shall be deter mined as threatening if any of the following occurs: it bites a person or another domestic animal; chases or approaches a person in a public area in a menacing fashion; or it injur es any person authorized to enter the owner's premises, including Housing Authority and its Agent's personnel.

  (v) The mature size of newly acquired pets shall be li mited to the following: cats shall not exceed 18 pounds; adult dogs shall not exceed 30 pounds; a maximum of two birds; and in the case of fish, no more than one aquariu m with a 2 0 gallon capacity. However, the size of a dog is not dir ectly related to appr oval as a resident owned pet. E ach animal will be taken into consideration based on its individual merit.

C. _Initial and Annual Requirements_. Lessee must complete a pet application prior to initial possession of a pet. Each year thereafter, at the time of the annual re-examination of income, Lessee must register with the Lessor, all pets (if applicable). The Lessor wi ll grant written approval for the pet to be maintained in the Leased Premises based upon co mpliance with all provisions o f this Lease. Additional requirements as follows must be met to receive approval for a pet to be maintained in the Leased Premises.

  (i) A pet registration fee of $25.00 (this is in addition to the Security Deposit) must be paid upon submission of the pet application. This fee is non-refundable and will not be returned to the Lessee under any condition.

  (ii) A pet deposit of $100.00 will be r equired and must be paid at ti me of application. The deposit will be placed in a escrow account and the Lessor will refund t he unused portion of the deposit, plus any accrued interest, to the Lessee if there are no damages to the Leased Premises or other property, the Lessee moves, or if the Lessee no longer owns or has a pet present in the Leased Premises.

  (iii) Lessee shall p rovide Lessor a color photo of the pet(s) listed on the p et application and the na me and ad dress of the pet 's veterinarian.

  (iv) Lessee must submit proof that pets have been vaccinate d by a licensed veterinarian with anti-rabies vaccine with the initi al pet application and each year at the time of pet registration.

  (v) Lessee must provide copies of the annual municipal license number for pets at the ti me of initial applica tion and ann ual registration.

  (vi) Every pet must wear a tag evidencing the municipal license number and the owner's name, address and telephone number. This tag must be attached to a collar or harness of the pet at all times while on Lessor's property.

  (vii) Female dogs and cats over six months old must be spayed and males over six months old must be neutered. I f for any reason this procedure would be detrimental to the animal's health, Lessee must submit a letter from a licensed veterinarian stating th e medical reasons why such action would be harmful to the pet. Proof of these procedures shall be submitted at the time of initial application or prior to the first year registration, if the pet is too young for the procedure at the time of initial application.

D. _Pet Rules_. Once an application for possession of a pet has been approved, Lessee must comply with the following rules at all times in order to maintain the pet.

(i)   While outside the Leased Premises, all dogs must be confined within an enclosure or kept on a secured leash in accordance with the Miami-Dade County Ordinance 18-14 and 7-12. The animal must be accompanied by a person who is able to control it.

(ii)  Pets are not permitted on  balconies, in management offices, community buildings, maintenance areas or other areas of the community dedicated for special purposes.

(iii) Pets must be walked within the "pet walking areas" if such areas have been designated at the site where the pet owner resides.  If such areas have not been designated by Lessor, then the owner of every pet is responsible for picking up the waste (feces) left by the pet on community property and disposing of it in a proper receptacle.

(iv)  No pet may make excessive noise, which disturbs the peaceful enjoyment of the community by other Lessee.

(v)   Lessee must furnish the name, address and phone number of the person(s) responsible for the care of the pet in case of an emergency.

(vi)  All places where animals are kept (kennels, pens, cages, a nd general dwelling space)  must be kept clean and wholesom e by removal of all odors, urine and other offensive matters and by suitable cleansing as often as may be necessary.

(vii) Cruelty to animals is strictly prohibited and any person committing such crime shall immediately be reported to Florida Society for the Prevention of Cruelty  to Animals, the City of  Miami-Dade  Department of Health and/or  the Miami-Dade Police Department. Cruelty of animals means the intentional or negligent mistreatment of any animal by any act or omission whereby pain, suffering or death is caused to such animal.

(viii) In accordance with the Miami-Dade County Ordinance 18-17, no Lessee shall hold, operate, sponsor or in any way further a contest that pits animals against each other. The trai ning of any animal to act in a  vicious or ferocious manner is strictl y prohibited.  Lessee shall not cause  an animal to engage in an y unnatural behavior, to wr estle or fight, to be physically or mentally harassed or encourage any animal to perform through the use of any chemical, mechanical, electrical or manual devices that will cause injury or suffering to the animal.

(ix)  Lessee may temporarily care for a pet in the Leased Premises provided that they are in compliance with the rules set forth herein and they have notified the manager if a pet is to be in a unit for a period longer than 30 days.  An application must be completed and all other provisions of this Lease shall apply.

(x)   Pets shall not be allowed within the  Leased Premises or the community by visitors or other persons not listed on the L ease. Such animals shall be considered trespassing and action will be taken to remove these animals from the community.

E.   Remedies and Assistance.  Violations of the foregoing terms and conditions shall be handled in accordance with the provisions of this Lease.  Lessee shall be entitled to all re medies permitted under federal, state and local law, including but not limited to utilization of the Grievance Policy and Procedures.

Every effort will be made to assist Lessee with the  maintenance of pets in accordance  with the foregoing terms and conditions including referral to the Florida Society for Prevention of Cruelty to Animals who may provide assistance with the cost of required vaccinations and licensing.

If you wish to report any neglect or cruelty to animals or animal fighting you should contact the SPCA office.  The Florida SPCA is located at 2101 Northwest 95th Street, Miami, FL. 33147, (305)696-0800

### SCOTT CARVER GRIEVANCE PROCEDURES

The Lessor shall strictly enforce compliance with the Lease and rules and regulations at the residential community. Nonetheless, it is important for all Lessees to have an outlet by which they can defend their position in this enforcement. To the extent the grievance process is required for Lessees of the Public Housing Units, it will also be uniformly available to Tax Credit and Market Rate lessees.

The Lessor will provide at least 30 days notice to Lessees and Lessee organizations of any proposed changes to these grievance procedures, and provide an opportunity to submit written comments regarding the proposed changes.

The grievance procedure is described as follows:

A.  Informal Settlement of Grievance

    (i)  A Lessee must make an oral or written complaint to the site office of the Lessor within seven (7) calendar days of the action complained about. If the complaint is oral, the Lessee or authorized designee (the "Site Manager") will provide a written acknowledgment of receipt of the complaint and the nature thereof.

    (ii)  The Lessee, through its Site Manager, will conduct an informal discussion with the grieving Lessee within five (5) business days and attempt to resolve the complaint without a formal hearing

    (iii)  A summary of the meeting, including the names of participants, date of the meeting, nature of the proposed disposition of the complaint and the reasons therefor, will be prepared by the Site Manager and mailed to the grieving Lessee, with a copy to the resident file, within seven (7) calendar days of the meeting. This summary will also outline, in boldface type, the steps needed to request a formal grievance hearing.

B.  Procedures to Obtain a Hearing:

    (i)  If the decision and proposed disposition stated in the Discussion Summary is not satisfactory to the Lessee, the Lessee must file a written request with the Site Manager for a formal grievance hearing within seven days after receipt of the Discussion Summary.

    (ii)  The request should include the reason for the grievance and the relief sought.

    (iii)  If the Lessee does not request a hearing in accordance with these procedures, the decision of the Site Manager as expressed in the Discussion Summary will become final. Failure of Lessee to request a hearing shall not constitute a waiver by the Lessee of his or her right to thereafter contest the Site Manager's action in disposing of the complaint in an appropriate judicial proceeding.

    (iv)  If the grievance relates to a rent dispute, the Lessee shall continue to make rent payments in an escrow account until the complaint is resolved, subject in the case of a grievance by Public Housing Unit resident to paragraph 2.8d. hereof.

C.  Procedures governing the hearing.

    (i)  Selection of Hearing Officer. The Hearing Officer shall be a person designated by the Lessor who is not the Site Manager or any Lessor employee subordinate to the Site Manager.

    (ii)  Procedure governing hearing.

        (a)  The Hearing shall be held before a Hearing Officer.

        (b)  The Lessee and Site Manager shall be afforded a fair hearing providing the basic safeguards of due process which include: (1) The opportunity upon request to examine before and during the Hearing, and, at the expense of the Lessee to copy all documents, including records and regulations of the Lessor that are directly relevant to the Hearing; (2) The right to be represented by counsel or other person chosen as his/her representative; (3) The right to a private hearing unless the Lessee requests a public hearing; (4) The right to present evidence and arguments in support of his/her compliant to controvert evidence relied on by the Lessor and to conform and cross-examine all witnesses upon whose testimony or information Lessor relies; (5) A decision based solely and exclusively upon the evidence presented at the Hearing.

        (c)  The Hearing Officer may render a decision without proceeding with the Hearing if the Hearing Officer determines that the issue has been previously decided in another proceeding.

        (d)  At the Hearing, the Lessee must first make a showing of entitlement to the relief sought and thereafter Lessor must sustain the burden of justifying the Site Manager action or failure to act against which the complaint is directed.

        (e)  The Hearing Officer shall require the Lessee, counsel and other participants or spectators to conduct themselves in an orderly fashion.

        (f)  Failure to comply with the directions of the Hearing Officer to obtain order may result in exclusion from the proceedings or in a decision adverse to the interests of the disorderly party and granting or denial of the relief sought as appropriate.

(g)    The Lessee or Site Manager may arrange in advance and at the expense of the party making such a request for a transcript of the Hearing. Any interested party may purchase a copy of such transcript.

(h)    The Hearing Officer shall provide reasonable accommodation for persons with disabilities to participate in the hearing. Reasonable accommodation may include qualified sign language interpreters, readers, accessible locations, or attendants. If the Lessee is visually impaired, any notice to the Lessee, which is required hereunder, shall be in an accessible format

(iii)    Failure to appear at hearing

(a)    Failure of either party or their representative to appear at the Hearing shall enable the Hearing Officer to determine either to postpone the hearing for a period of time not to exceed five (5) business days or make a determination that the non-appearing party has waived its right to a Hearing.

(b)    The Lessee and the Site Manager will both be notified in writing of the determination and/or decision by the Hearing Officer.

(c)    Failure of the Lessee to appear at the Hearing or a determination that the complainant has waived his/her right to a hearing shall not constitute a waiver of any right the Lessee may have to contest the Site Manager's disposition of the grievance in an appropriate judicial proceeding.

(iv)    Decisions of Hearing Officer.

(a)    The Hearing Officer shall prepare a written decision, together with the reasons, within ten (10) working days after the Hearing.

(b)    A copy of the decisions will be sent to the Lessee and Site Manager at the same time.

(c)    Site Manager will retain a copy of the decision in the Lessee's folder.

(d)    A copy of such decision, with all names and identifying references deleted, shall also be maintained on file by the Lessor and made available for inspection by a prospective Lessee, his representative, or the Hearing Officer.

(e)    The decision of the Hearing Officer shall be binding on the Lessee which shall take all actions, or refrain from any actions necessary to carry out the decision.

(f)    A decision by the Hearing Officer in favor of Lessor or which denies the relief requested by the Lessee in whole or in part shall not constitute a waiver of nor affect in any manner whatsoever, any right the Lessee may have to judicial review in any judicial proceedings, which may thereafter be brought in the matter.

(v)    Eviction actions in grievances involving lease terminations.

(a)    If a Lessee has requested a hearing on a complaint involving the Lessor's action to terminate the Lease, Site Manager shall not commence an eviction action in a state or local court until it has served a notice to terminate the Lease on the Lessee.

(b)    In no event shall a notice to terminate the Lease be served prior to the decision of the Hearing Officer having been mailed or delivered to the Lessee.

(c)    Such notice to terminate the Lease must be in writing and specify that if the tenant fails to quit the premises within the appropriate authorized period, or on the termination date stated in the notice of termination of the Lease, whichever is later, appropriate action will be brought against him/her and he/she may be required to pay court costs and attorneys' fees.

# Radon Gas Disclosure Statement

Name and Address of Site: Scott Carver IIC, L.P.

2181 NW 74th Street, Miami FL 33147

Apartment Number:   74-107

Address: 7344 NW 23rd Avenue          Miami          FL          33147

**1. The following disclosure is required by the Florida Radiation Protection Act, Fla. Stat. §404.056(8):**

Radon Gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**2. The following additional disclosure is made by Scott Carver IIC, L.P. (the Owner):**

According to the Florida Department of Health, levels of radon that exceed federal and state guidelines have been reported from all regions of Florida. All buildings at Northpark at Scott Carver were constructed with a radon control system under the building slab. Vent fans were installed in buildings at Northpark where initial radon test results exceeded federal and state guidelines. The Owner is consulting with a radon mitigation contractor certified by the Florida Department of Health regarding recommended additional testing and/or other action to address radon levels above federal and state guidelines detected during subsequent testing in some buildings. Therefore, it is possible that the Property Manager, as agent for the Owner, may require access to your apartment to perform additional radon testing or radon mitigation. If you would like additional information on tests for your apartment, please submit your request to the Property Manager at (305) 826-9160.

Information about radon may be obtained from the Miami-Dade County Health Department at (305) 324-2400 or the Florida Department of Health, Radon and Indoor Air Quality Program at (850) 488-1525 or toll free at 1-(800)-543-8279.

I/we acknowledge receipt of the foregoing disclosure statement.

Date: 6-26-14

Resident (Printed Name): Angela John

Resident (Signature): _Angela John_

Resident (Printed Name): _Lenoris Johnson_

Resident (Signature): Lenoris Johnson

5/9/12

Scott Carver IIC, L.P.

2181 NW 74th Street, Miami FL 33147

# Communications Release Addendum

I, Angela Johnson _____ who resides at

7344 NW 23rd Avenue;

in the Northpark at Scott Carver _____ Apartment Community here by

authorize Northpark at Scott Carver _____ and McCormack Baron Ragan
Management Services, Inc. to deliver communications regarding rent, renewals,
upcoming events, work requests, and any other items that pertain to the property,
me, my occupants, or guests in the form of:

____ Home Phone Number 786- 257-9281 _____

____ Text Messaging to _____
       Cell Phone Carrier:_____

____ Alternate Text Messaging to _____
       Cell Phone Carrier:_____

(Carrier information is necessary for email to text delivery.)
(Text messaging rates may apply from your carrier and are not the responsibility of
Northpark at Scott Carver _____ or McCormack Baron Ragan Management Services, Inc. to pay for those
charges)

____ E-mail to _____
____ Alternate E-mail to _____

I understand Northpark at Scott Carver _____ and McCormack
Baron Ragan will not be held liable for any communications in the event they are
viewed by others and will not sell or give away my email address or personal
information to an outside party.

_____        6-26-14
Resident Signature                        Date

_____        6-26-14
Resident Signature                        Date

_____        6/26/14
Agent Signature                            Date

Rev. 03.01.11

Lenorio  Johnson                            6-26-14

**Scott Carver IIC, L.P.**

2181 NW 74th Street, Miami FL 33147

# SECTION 42 ADDENDUM TO LEASE

Addendum to LEASE, made and entered into this ___1___ day of _____July_____, __2014__, by and between McCormack Baron Management Services, Inc. and Lessee for Leased Premises located at:  Address: ___7344 NW 23rd Avenue_____ Apt. No. _74-107_

Lessee acknowledges that __Scott Carver IIC, L.P._____(Property Name) is operated pursuant to the rules and regulations of Section 42 of the Internal Revenue Code known as the Low Income Housing Tax Credit Program ("the Program").  The following provisions apply:

<u>Maximum Rent Calculation:</u>
The Program provides a specific maximum monthly rent which may be charged for the Leased Premises subject to annual adjustments based on median incomes of the local statistical metropolitan area, determined by the Department of Housing and Urban Development ("HUD"). Because the rent is calculated using such published current median income limits, when the income limits are available, new rents will be published at that time instead of at lease renewal time.  Notice of any rent increase will be at least  30 days in advance of the next rental due date.  Notwithstanding anything to the contrary, Lessor agrees that any such increase will not exceed $_1061_____per month and expected rent publication will be within the first quarter of each year.

<u>Qualified Household Requirement:</u>
Lessee must be a "Qualified Household", defined by the Program as follows:
1.      Income of household must be within the median income ceiling limits determined annually by HUD.
2.      The Leased Premises can never be occupied in its entirety by full-time students unless one of the following exceptions are met:
      a.      Any one of the students is married and actually files a joint federal tax return.
      b.      The household consists of a single parent with documented custody of a school age child or children <u>and</u> none of who are dependents of a third party.
      c.      Any one of occupants receives Aid to Families with Dependent Children or other assistance under Title IV of the Social Security Act.
      d.      An applicant is enrolled in and receiving assistance under the Job Training Partnership Act or a similar government job training program.
      e.      A student was previously under the care and placement responsibility of the State agency responsible for administering a plan under part B or part E of title IV of the Social Security Act (Foster Care).

Lessee agrees to notify Lessor immediately of any change in student status by any member of the household.  The Program requires that if Lessee fails to meet all student status requirements, Lessee will be required to move from the Leased Premises upon 30 days notice from Lessor.

<u>Submission of Required Documentation:</u>
Lessee is required to annually submit to Lessor all necessary to insure that Lessee remains a qualified household.   In the event Lessee fails to deliver such information, or Lessor determines (based on renewal information or otherwise) that Lessee is not qualified under the Program, Lessees agrees to vacate the Leased Premises on the earlier of its expiration or upon 30 days notice from Lessor of non-qualifying status.

Lessee(s):
By:_____     Date: 06-26-14
_____     Date: 6-26-14
_Lehoris Johnson_____     Date: 6-24-14

Lessor:
By:_____     Date: 6/26/14

# SMOKE DETECTOR ADDENDUM TO LEASE

Addendum to LEASE,
dated _____ 1 _____ day of ___ July ___ , _____ 2014 _____ , by and between

McCormack Baron Management Services, Inc. (Lessor) and Lessee for the following location:

Property Name: Scott Carver IIC, L.P.

Address: 7344 NW 23rd Avenue _____ Apt. No. _74-107_

The premises are equipped with a smoke detector. It is agreed that the responsibilities for maintaining all smoke detectors and alarms are outlined below.

Each Lessee will be responsible for testing the smoke alarm at least once every week by pushing the "PUSH TO TEST" on the detector for about 5 seconds. To be operating properly, the alarm will sound when the button is pushed. If there is no sound, the resident must inform the Lessor at the management office immediately by initiating a work order.

Tampering with or disabling the smoke detector places you and your neighbors in jeopardy of injury and is a violation of your Lease.

It is agreed that the Lessor, in the presence of the Lessee tested the apartment smoke detector at time of initial occupancy and the detector was working properly at time.

<u>Signatures:</u>

Lessee(s):

By: _____   Date: 6-26-14

_____   Date: Le-26-14

Lenoris Johnson _____   Date: 6-26-14

Lessor:

By: _____   Date: 6/26/14

Smoke Detector Addendum to Lease

# McCormack
# Baron
# Ragan

### LIHTC LEASE ADDENDUM

The rental community in which th e dwelling unit is located has received certain assistance pursuant to the ru les and regulations of the Federal Low Income Housing Tax Credit Program (the **"LIHTC Program"**).  As a res ult, the Lease for the dw elling unit receiving the benefit o f such assistance is amended by the following provisions, which supersede any contrary provisions of the main text of the Lease.

**WHEREAS**, Lessee hereby acknow ledges and understands that the Leased Prem ises is operated pursuant to the rules and regulations of the LIHTC Program.

**WHEREAS**, the LIHTC Program provides for a sp ecific maximum monthly rent which may be charged for the Leased Prem ises, which amount is subject to a nnual adjustment based upon Area Median Incom es as determ ined by the United States Depart ment of Housing and Urban Development ("**HUD**").

**WHEREAS**, the LIHTC Program requires that th e Leased Prem ises be leased to "**Qualified Households**" as defined by Section 42 of the In ternal Revenue Code of 1986 (the "**Code**").

**WHEREAS**, Qualified Households must meet certain age and income limitations.

**WHEREAS**, for the Le ased Premises, any lessee household is required to have annual income not in excess of [140%] of the applicable gross Area Me dian Income, as adjusted for family size, to be a Qualified Household.

**WHEREAS**, under the LIHTC Program, a Qualified Household must not consist entirely of full-time students, unless such students qualify to file a joint federal income tax return.

**NOW THEREFORE**,

1.  Lessee agrees that Lessee's continued eligibility as a Qualified Household is a m aterial term and condition of the Lease Agreem ent, and Le ssee agrees to surrender possession of the Leased Premises if Lessee is no lon ger eligible as a Qualified Household, and Lessee agrees further that Lessee's inelig ibility as a Qua lified Household shall be sufficient cause for Lessor to terminate or not renew the Lease Agreement and obtain possession of the Leased Premises.

2.  Lessee shall notify Lessor immediately in writing of any change in the incom e, employment or composition of Lessee's household.

3. Lessor will make an annual determination of Lessee's continued eligibility under the LIHTC Program's guidelines. Thus, Lessee agrees that 120 calendar days prior to the expiration of the Lease, Lessee shall submit on forms provided by Lessor signed sta tements setting forth the current facts as to Lessee's fam ily income, employment and size, with such verification as Lessor m ay require. **Lessee's failure to c omplete such forms a nd return them to Lessor shall be sufficient cause for Lessor to terminate the Lease Agreement and obtain possession of the Leased Premises .** Lessee agrees to vacate the Leased Premises upon the earlier of the expiration of the Lease or upon 30 days written notice from Lessor of non-qualifying status. Lessee specifically agrees that each representation or certification provided on such forms is m aterial, and that any m isrepresentation of information shall con stitute a material breach of the Lease Agreement.

4. If Lessee does not supply accurate infor mation on the incom e and fam ily composition of Lessee's household that Lessor will require on forms provided to Lessee, Lessor m ay, in addition to its other remedies, increase Lesse e's rent up to the m aximum amount otherwise permitted by applicable laws.

5. Lessee acknowledges that the LIHT C Program provides for specific eligibility restrictions with respect to occupancy by full-tim e students. Lessee acknowledges that eligibility to remain as a Lessee is at all tim es dependent upon the household m eeting all student status eligibility requirements. Lessee shall notify Lessor immediately of any change in the student status of any m ember of Lessee's household. Should Lessee fail to m eet all student status eligibility requirements, Lessee shall be deemed ineligible and shall be subject to immediate eviction.

6. If there is any conflict between the term s of this Lease Agreem ent Addendum and any other provision of the Lease Agreem ent, the term s of this Lease Agreem ent Addendum shall govern.

**IN WITNESS WHEREOF**, the parties set forth their signatures below.

LESSEE(S):

By: _[signature]_     Date: 6-26-14

_[signature]_     Date: 6-26-14

Lenoris Johnson     Date: 6-26-14

LESSOR:

**McCormack Baron Ragan Management Services, Inc., as Agent for Owner**

By: _[signature]_     Date: 6/26/14

Title: Ast Mgr

**REPORTING   YOUR FAMILY INCOME AND COMPOSITION
ANNUALLY IS IMPORTANT.   THIS ESTABLISHES YOUR
ELIGIBILITY TO REMAIN IN TH E QUALIFIED L EASED PREMISES
AS REQUIRED BY T HE LIHTC PROGRAM (UNDER THE CODE AND
U.S. DEPARTMENT OF TREASURY REGULATIONS PROMULGATED
THEREUNDER).**

I have been informed  of and fully understand the above.  I hereby acknowledge  that I have
received a copy of the forms on which to report family income, size and employment, as required
by paragraph 3 of this Lease Agreement Addendum.

| 6-26-14 | _(signature)_ |
| --- | --- |
| Date | |

| 6-26-14 | _(signature)_ |
| --- | --- |
| Date | |

| 6-26-14 | Lenorris Johnson |
| --- | --- |
| Date | |

# MCCORMACK
# BARON
# RAGAN

### PUBLIC HOUSING DWELLING LEASE ADDENDUM

**1.    AGREEMENT TO THE TERMS OF THE LEASE ADDENDUM**
Reference is made to that certain Residential Lease, made and entered into on ___1___ day of _____July_____, __2014__, by and

between McCormack Baron Ragan Management Services, Inc. as agent for __Scott Carver IIC, L.P._____ ("Lessor")
(Property Name)

and _Angela Johnson_____ ("Lessee").

Lessor and Lessee agree that this Public Housing Lease Addendum is incorporated into and made part of the Lease. In the event of a conflict between the Lease Addendum and the Lease, the terms and conditions of the Lease Addendum shall prevail. All capitalized terms in the Lease Addendum shall have the same meaning as those set forth in the Lease.

**2.    COMMENCEMENT AND ENDING DATE OF THE LEASE**
A.    The initial term of this Lease shall not exceed twelve months and shall cover the period beginning _____July 01, 2014_____
and ending at midnight __June 30, 2015_____.
B.    Unless otherwise modified or terminated in accordance with the terms of the Lease or the Lease Addendum, this Lease shall automatically be renewed for successive terms of twelve calendar months.

**3.    ANNUAL REEXAMINATIONS AND DETERMINATION OF ELIGIBILITY**
A.    In accordance with federal regulations, the status of Lessee's household will be re-examined at least once every twelve (12) months in order to re-determine rent, dwelling size and eligibility to continue occupancy. This re-examination shall be conducted in accordance with the approved statement of policies and procedures, laws and regulations, schedule of rents, income and occupancy limits.

B.    The Lessee agrees to promptly supply the Lessor, when requested, with accurate information about: Social Security Number, citizenship or eligible immigration status, family composition (including age and gender), income, assets, employment, handicap or disability of family members, proof of school registration and school attendance of minor children and related information necessary to determine eligibility, annual income, adjusted income and rent. Providing incomplete and inaccurate information will be considered fraud and shall constitute grounds for eviction.

C.    All information supplied to the Lessor must be verified. The Lessee is responsible for complying with the Lessor's request for verification. This may include signing releases for third-party sources, presenting documents for review, or providing other suitable forms of verification. Lessor may conduct a criminal background screening on the Lessee or any household member during annual reexamination or whenever the Lessor deems it necessary. Lessor is final determiner as to whether the information has been adequately verified. The Lessee shall be notified in writing of the effective date of any rent adjustment resulting from the reexamination.

D.    If due to instability of family income or family composition, annual family income cannot be determined, a temporary determination of income and rent will be made and a special reexamination will be scheduled every 30 days, not to exceed a total of 90 days, or until stable income is established, whichever comes first. The Lessee shall be notified in writing of the date of each special reexamination.

E.    Re-certifications or reexaminations during the contemplation of, or pending lease termination or eviction proceedings shall not constitute a waiver of the right to pursue such proceedings.

**4.    INTERIM RE-CERTIFICATIONS; ADJUSTMENTS TO RENT**
A.    Lessor will not consider rent to have changed during the period between annual re-certifications unless the following occurs:

(i)    If the total family income increases by $200.00 or more per month, the Lessee must report such change in writing to the management office within ten (10) days of occurrence. Decreases of income in any amount lasting longer than one month may be processed at the resident's request. Changes that result in an increase or decrease in rent must be verified in accordance with article VI above.

(ii)    Any changes to family composition, including natural birth or adoption, must be reported in writing to the Lessor as soon as they are known, but in no event later than ten (10) days after occurrence. Changes that result in an increase or decrease in rent must be timely verified.

(iii)    Rent will not be adjusted when income decreases result from verified failure to participate in an economic self-sufficiency program, or failure to comply with work or community service requirements, or fraud, by any member of the family composition under any Federal, State or County law applicable to welfare or public assistance benefits.

      (iv)    Rent may be adjusted between scheduled re-examinations when rent formulas or procedures change, or if utility allowances applicable to the unit are adjusted, as allowed by federal law and regulations.

B.    If as a result of the rent adjustment the monthly rental payment decreases, the rent adjustment will become effective the first day of the month following the date the information is reported to the Lessor. If the rent should increase as a result of the rent adjustment, the adjustment will become effective the first day of the second month following the date the change in circumstances is reported to the Lessor.

C.    If it is found that the Lessee failed to timely report any changes in income or family composition as described above, or provided inaccurate, or incomplete information it will be considered fraud, any of the following may occur.

      (i)    Any increase in rent which would have occurred had changes been reported in a timely manner will be made retroactive to the effective date of the change in circumstances and the Lessee agrees to reimburse the Lessor for the difference between the rent he/she should have paid and the rent he/she was charged.

      (ii)    Any decrease in rent which would have occurred had changes been reported in a timely manner will be made effective the first day of the month following the date the change is reported to the Lessor, and will not apply retroactively.

      (iii)    The Lessee may be subject to eviction and/or prosecution regardless of the effect on rent, if any.

**5.   CHOICE OF RENT**

A.    At the time of Lessee's annual reexamination, Lessee may choose to pay (i) a flat rent based upon a schedule established from time to time by Lessor, or (ii) an income-based rent based upon family income. In no event shall the Lessee pay less than the minimum rent established by Lessor.

B.    Subject to the reporting and verification requirements in paragraph 4 of this Lease Addendum, Lessee may request a change from payment of a flat rent to payment of an income-based rent, and may request an exemption from payment of a minimum rent, prior to Lessee's annual recertification because of financial hardship. Lessor will approve a request for a change to an income-based rent and a request for exemption from payment of a minimum rent if Lessor determines, based on verification submitted by Lessee, that: (i) Lessee has experienced a decrease in income because of changed circumstances, including loss or reduction of employment, death of a family member, or other loss of income; or (ii) Lessee has due to changed circumstances experienced an increase in expenses for or medical costs, child care, transportation, education, or similar items.

**6.   STUDENTS**

The Lessee's household shall not consist entirely of full-time students, unless, (i) a member of the household receives assistance under a federal state or local job training program; (ii) a member of the household receives Transitional Assistance to Needy Families; (iii) the household consists of a single parent and his or her children, and the parent and children are not tax dependents of another person, other than a parent of such children; (iv) the household consists solely of a married couple that files a joint tax return; or (v) the household consists of a student who was previously assisted by the state agency responsible for child welfare services, foster care services, or adoption services. The Lessee agrees that the Lessor may terminate the Lease if the Lessee does not comply with the obligations set forth in this paragraph.

**7.   TERMINATION OF THE LEASE**

A.    This Lease may be terminated by the Lessee at the end of the first year, by the Lessee giving thirty (30) days written notice to Lessor.

B.    This Lease may be terminated by the Lessor for any of the following reasons:

      (i)    Failure by the Lessee or any member of his/her household to fulfill his/her obligations outlined under the Articles of this Lease, the Community Policies and any addenda or amendments to the Lease or Community policies.

      (ii)    A serious or repeated violation by the Lessee or any member of his/her household of one or more terms of the Lease.

      (iii)    The denial of service, disconnection or shutting off of utilities that the Lessee is responsible for paying. MDPHA will not terminate assistance if the resident restores utility service legally and timely as required with the timeframe of the 30-day notice to cure.

      (iv)    Any activity, criminal or non-criminal, engaged in by the Lessee, any member of his/her household, a guest or a person under the control of the Lessee, which threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or employees of Lessor.

      (v)    Any criminal activity (violent, non-violent, or drug-related) whether on or off the premises committed by the resident, any member of his/her household, a guest or a person under the control of the resident, that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or employees of MDPHA. Any such criminal activity, even in the absence of a conviction, shall be cause for termination of tenancy, and for eviction from the Leased Premises. For the purposes of this Lease:

          (a)    Drug-related criminal activity shall include: illegal possession, manufacture, sale, distribution, use and/or possession with intent to manufacture, sell, distribute, or use, a controlled substance; and

          (b)    Violent criminal activity shall include: any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, nontrivial bodily injury or property damage.

          (c)    Non-violent criminal activity shall include: any activity that threatens the health, safety or right to peaceful enjoyment by the residents or employees of MDPHA.

          (d)    A single arrest where the criminal charges are dropped, dismissed no action, nolle prossed or other resolution that does not involve an admission of guilt, or where the applicant is found not guilty or acquitted, shall not result in denied assistance except for cases specified in Chapter II, section J (4) (c) of the ACOP, or when there is a history or pattern

of repeated arrests, or when such activity threatens health, safety, or right to peaceful enjoyment by residents and employees of MDPHA.

(vi) Failure by the Lessee to report to any reexamination interview or provide verification of any information required by the Lessor.

(vii) Lessee and Household Members shall not commit fraud, bribery, or any other corrupt or criminal act in connection with any government agency or program. If it is determined that resident or any household member has provided fraudulent information or committed fraud in connection with the application process, or to otherwise remain in the Leased Premises,

(viii) Failure to keep the Leased Premises, the surrounding premises and any such other areas as may be assigned to the Lessee for the Lessee's exclusive use in a clean, safe and sanitary condition.

(ix) Failure to comply with Federal, State or local public assistance program requirements related to work activities, community service requirements, or fraud.

(x) If the Lessee or any member of his/her household, a guest or a person under the Lessee's control, engages in the illegal use, or threatened use of or display of firearms, fire bombs or other weapons on Lessor's property.

(xi) If the conduct of the Lessee, any member of his/her household, a guest or a person under the Lessee's control, is such that there is a likelihood that his or her presence on the premises may lead to personal injury or property damage.

(xii) If school-age children do not attend school regularly and are absent more than 15 unexcused days within any 90-day period of a given school year except in instances of death, serious illness or injury, or the child who attains the age of 16 years files a formal declaration of intent to terminate school enrollment with the school board.

(xiii) Serious or repeated damage to the Leased Premises, creation of physical hazards in the unit, common areas, grounds, or parking areas. Lessee must pay for any necessary repairs of damages caused; non-payment will be grounds for termination.

(xiv) Any fire on the premises caused by carelessness, failure to supervise children or unattended cooking.

(xv) If the Lessee, any member of his/her household, a guest or a person under the Lessee's control threatens, obstructs or interferes with an employee of the landlord or any government official conducting official business on or around the premises.

(xvi) The Lessee refuses to accept the Lessor's proposed change(s) to this lease.

(xvii) If the Lessee repeatedly interferes with, or is counter to Lease or Community policies, or if the Lease has expired and has not been renewed.

C. A Lessee member of the United States Armed Forces who is required to move pursuant to permanent change of station 35 miles or more from the location of the rental premises, or who is prematurely or involuntarily discharged or released from active duty with the United States Armed Forces, may terminate his or her rental agreement by providing the Lessor with a written notice of termination to be effective at least 30 days after the Lessor's receipt of the notice. The notice to the Lessor must be accompanied by a copy of the official military order or written verification signed by the member's commanding officer.

D. If the Lessor proposes to terminate this Lease, the termination of the Lease shall be as follows:

(i) Lessor shall give fourteen (14) days written notice of termination if said termination is caused by Lessee's failure to pay rent.

(ii) Lessor shall give seven (7) days written notice of termination for serious violations of the Lease.

(iii) Lessor shall give thirty (30) days written notice of termination in any other case.

**8.  CHANGE IN RENTAL AGREEMENT**

During the term of the Lease, the Lessor may change the terms and conditions of this Lease. The Lessor shall notify the Lessee of any change at least thirty (30) days before the proposed effective date of the change. The Lessee may accept the changed terms and conditions by signing a new Lease, addenda or amendments to the existing Lease. Failure to sign indicates that the Lessee has rejected the changed terms and conditions and that he/she intends to terminate the tenancy effective at the end of the last monthly period prior to the effective date of the proposed change.

**9.  LATE CHARGES**

Notwithstanding any provision of the Residential Lease, if Lessee's rent is not received by the fourteenth day of any month, Lessee shall pay as a late charge the amount of $ _____. The late charge must be paid no later than fourteen (14) days after the Lessor's written notice to the Lessee.

IN WITNESS THEREOF, the parties have executed this Public Housing Lease Addendum this _1_ day of _July_ _____, in the year 20__.

RESIDENT                     MCCORMA       CK BARON RAGAN MANAGEMENT SERVICES, INC.,

Agent for:

_____              _____
Lessee (Head of Household)            Lessor/Authorized Representative

_____              _____
Spouse (if applicable)        Site          Name

_____              _____
Family/Household Member (18 or older)    Site address

_____
Family/Household Member (18 or older)

_____

KH 161659.15                                                              19